**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

RICHARD M. SMITH, )
)
        Plaintiff, )
)
v. ) Case No. CIV-06-358-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

**OPINION AND ORDER**

Plaintiff Richard M. Smith (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 1, 1953 and was 52 years old at the time of the ALJ's decision. He completed his education through the twelfth grade, a bachelor's degree in education, and an associate's degree in nursing. Claimant has previously worked as a registered nurse. Claimant alleges an inability to work beginning July 1, 2004, due to back pain, muscle spasms in his back, pain, numbness and tingling down his right leg, sleep problems due to pain, depression, concentration problems, memory problems, stomach problems, and side effects from medication.

### Procedural History

On December 10, 2004, Claimant filed for disability insurance

benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On March 2, 2006, Claimant appeared at a hearing before ALJ Lantz McClain. By decision dated March 30, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On July 14, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow him to perform a significant range of sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) ignoring or inaccurately describing vital probative medical evidence in Claimant's record; and (2) failing to properly evaluate the opinions of Claimant's treating physician.

### ALJ's Consideration of the Record

Claimant contends the ALJ failed to consider certain evidence which was probative on the issue of Claimant's disability status. Specifically, Claimant alleges the ALJ ignored the objective

4

examination findings of Kim L. Kurvink, M.D., a treating physician. Dr. Kurvink attended Claimant on July 6, 2004. Claimant complained he had injured his lower back on July 1, 2004 when he stood up from a chair. (Tr. 176). Dr. Kurvink noted Claimant was experiencing tenderness at the sacroiliac joint, but no spinal tenderness. Claimant could flex his lumbar spine to 45 degrees. (Tr. 177). On August 5, 2004, Claimant underwent an MRI of his spine. James Melton, M.D. performed the MRI and found a grade 1 spondylolisthesis of L5 and S1 along with thinning of the disc. At L3-L4, the MRI revealed an extruded disc to the right of midline. Disc material extended inferiority for about 2.0 centimeters. Nerve root compression on the right side could not be excluded. Bulging of the annulus was present at L5-S1 but no specific nerved root compression was identified on either side. Dr. Melton's impression was "1. Grade 1 spondylolisthesis of L5 on S1; 2. Degenerative disc disease at L5-S1; and 3. Extruded disc with inferior migration at L3-L4 on the right side. Nerve root compression on the right side cannot be excluded." (Tr. 157).

Dr. Kurvink also referred Claimant to Stephen J. Eichert, D.O., a neurosurgeon. Dr. Eichert saw Claimant on August 13, 2004. Dr. Eichert states in his report that Claimant complained of back pain and some left leg pain beginning on July 1, 2004 and three days later, complained of severe and persistent right leg pain. Claimant also stated his leg felt as if it would give-way and he

experienced numbness in his anterior calf. He related that the symptoms were worse when he laid down. Dr. Eichert found Claimant had a tendency to footdrop no heel walking, diminished right patella reflexes, and positive straight leg raises on the right. (Tr. 150). Dr. Eichert diagnosed Claimant with acute lumbar radiculitis due to L3-L4 disk herniation and L3-L4 disk bulge resulting in left-sided symptoms as well. Dr. Eichert recommended a bilateral L3-L4 hemilaminotomies and diskectomies. (Tr. 151).

On August 23, 2004, Claimant underwent a surgical procedure at Hillcrest Hospital. A large free fragment of disk was appreciated just inferior to the pedicle and was removed with microdissection technique in a single fragment. The fragment was curetted and removed until there was no further nerve root compression and no additional fragments of disk appreciated. The left side was treated similarly with only a small portion of the facet removed and the disk was not herniated. (Tr. 163-164).

On December 30, 2004, Claimant again saw Dr. Kurvink. Dr. Kurvink noted Claimant had "no new complaints." (Tr. 172).

On February 3, 2005, Claimant was attended by Dr. Kurvink, complaining of low back pain and depression. Dr. Kurvink noted Claimant's report that he experienced radiating pain down his right leg, he had to lie down every two hours to relieve the pain, he is able to stand and walk for 30-40 minutes at a time. Dr. Kurvink stated Claimant's depression was controlled by medication.

6

Claimant reported low back pain on straight leg raises and numbness on the right calf and right foot. Dr. Kurvink acknowledged Claimant's healed scar from his surgery, mild tenderness around the scar, lumbar flexion to 80 degrees. (Tr. 170-171).

On this same date, Dr. Kurvink authored and signed a letter addressed "To Whom It May Concern." This letter stated

> Richard M. Smith was seen in my clinic today. He has chronic low back pain. His work related activities are limited. He is able to sit for only two hours at a time, then he needs to lie down for an hour or more to help relieve his low back pain. He is able to stand or walk for only 30 to 40 minutes at a time. Lifting or carrying is limited to about 20 pounds. He is able to handle objects of that weight or less without difficulty. He has no difficulty hearing or speaking. Traveling is limited due to his low back pain and difficulty sitting for more than two hours at a time.
>
> He has no difficulty with mental activity such as understanding, memory, sustained concentration and persistence, social interaction, or adaptation.

(Tr. 167).

On April 8, 2005, Dr. Kurvink noted Claimant presented with continued low back pain. Claimant demonstrated lumbar flexion of 20 degrees. Dr. Kurvink indicated Claimant had diminished sensation to touch in both his anterior and medial lower tibial area. (Tr. 221-222).

On August 19, 2005, Dr. Kurvink found Claimant had lumbar flexion of 45 degrees. He also recorded that Claimant's patellar deep tendon reflex was 1+ on the right and 2+ on the left side. Claimant also complained of numbness in this right calf. (Tr. 216-

7

217).

On February 24, 2006, Claimant underwent an MRI with Dr. Melton because of his continued low back pain. In comparing this MRI with the one done on August 5, 2004, Dr. Melton found a loss of interspace height at L5-S1, desiccation of L3-L4, T12-L1 and to a lesser extent, L1-L2. He noted a loss of interspace height at L1-L2, L2-L3, L3-L4, and L5-S1. He determined these findings were relatively unaltered from the prior MRI. Neural foraminal stenosis was noted bilaterally at L2-L3, L3-L4, L4-L5, and L5-S1, with it most prominent at L5-S1. A midline herniation was noted at L3-L4. The mass effect behind the L4 vertebral body was found to be compatible with a herniated disk. (Tr. 228).

In his decision, the ALJ acknowledged Dr. Kurvink's letter of February 3, 2005. However, he rejected that opinion, finding it "is not well supported by medically acceptable clinical and diagnostic techniques and because it is inconsistent with other substantial medical evidence of record." He did not give Dr. Kurvink's opinions controlling weight. (Tr. 14).

Although the ALJ recognized Dr. Kurvink as Claimant's primary care physician, he states Dr. Kurvink "has no particular medical expertise (specialty) in orthopedics or neurology," and did not provide "much treatment" for Claimant's alleged conditions, except for providing medication and a referral. Id. The ALJ found Dr. Kurvink's opinion is

deficient and without much supportive medical
documentation. Dr. Kurvink did not report, to any useful
extent, examination findings, and therefore it is unclear
what his exact findings were. In his disability
statement Dr. Kurvink did not refer to any clinical or
diagnostic findings which supported his opinions. Dr.
Kurvink's office notes are primarily remarkable for
"blank" entries and subjective findings (as opposed to
neurological abnormalities). Dr. Kurvink did not refer
to reports of other individual providers, hospitals, or
clinics with any specificity, and he did not indicate on
what basis his treatment of the claimant would support
his disability opinion.

Id.

The ALJ, after generally citing to 20 C.F.R. § 404.1527 and stating he considered the factors contained in that section, determined Dr. Kurvink's opinion was not entitled to either controlling or substantial weight. Id. His only other recognition of Dr. Kurvink's opinions was in reference to the MRI done in February of 2006, which the ALJ erroneously states as having occurred on "February 27, 2005." The ALJ acknowledged Dr. Kurvink's statement that the findings from this later MRI supported Claimant's subjective pain complaints but stated that the radiologist interpreting the MRI found Claimant's condition had improved from the pre-operative study. (Tr. 17). Notably, the ALJ endorsed Dr. Kurvink's mental evaluation and opinion with regard to Claimant. (Tr. 16).

Generally, an ALJ is not required to discuss every piece of evidence in his decision. Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004). However, he must discuss the evidence supporting

his decision, the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he rejects. Id. In this case, the ALJ discussed selective portions of the medical records generated by Dr. Kurvink while ignoring or failing to reference other, relevant reports. Indeed, the ALJ only cites to the February 3 letter and the subsequent MRI without any reference to the preceding and intervening examinations and resultant reports. Moreover, the ALJ suggests by this characterization of Dr. Kurvink's interpretation of the February 27, 2006 MRI that Dr. Kurvink skews his opinions to assist Claimant. In truth, the fact the radiologist states the February 27 MRI shows improvement is not inconsistent with Dr. Kurvink's conclusion that the MRI supports Claimant's subjective pain complaints. Consequently, the ALJ's failure to discuss all of the relevant medical evidence contained in the record requires the reversal of the decision and remand for further elaboration.

### Treating Physician's Opinions

In a similar vein, Claimant also challenges the ALJ's discussion and rejection of Dr. Kurvink's opinions as Claimant's treating physician. The ALJ noted Dr. Kurvink's status as Claimant's treating physician in his decision. As already noted in this Order, he then fails to give Dr. Kurvink's opinions any weight, except where it supports the ALJ's ultimate conclusion that Claimant suffers from no disability in the specific area of

evaluating Claimant's mental state.  In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1300-01 (quotation omitted).

11

After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's opinion lacks the specific, legitimate reasons for the rejection of Dr. Kurvink's opinions. While the ALJ inserts boilerplate references to the regulations which set out the factors to be considered in his decision, he does not engage in any discussion of those factors, including the reason for their inapplicability. The matter must, therefore, be remanded for further findings consistent with the prevailing case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 3rd day of October, 2007.

```
                       _____
                       KIMBERLY E. WEST
                       UNITED STATES MAGISTRATE JUDGE
```